UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
:
SYMPHONY INVESTMENT PARTNERS, INC., :
:
                     Plaintiff, :
   -against- :
:    MEMORANDUM DECISION
KEECO, LLC, and RICHARD PLATT, :          AND ORDER
:
                  Defendants. :
:         20 Civ. 9892 (GBD)
:
:
------------------------------------- x

GEORGE B. DANIELS, District Judge:

    Plaintiff, Symphony Investment Partners, Inc. ("Symphony"), brings seven causes of action against Defendants Keeco, LLC ("Keeco") and Richard Platt ("Platt"), (collectively, "Defendants"). (Compl., ECF No. 1, Ex. A.) The first three causes of action are against Keeco for (1) breach of contract, (2) unjust enrichment, and (3) promissory estoppel. The last four causes of action are against Platt for (4) breach of contract, (5) unjust enrichment, (6) promissory estoppel, and (7) tortious interference with contract. (*Id.*)

    Overall, Symphony's claims relate to a non-disclosure agreement or NDA, entered between Symphony and Keeco. Platt, it is alleged, helped facilitate a potential transaction between Symphony, Keeco, and a third party.

    Keeco and Platt each filed motions for summary judgment of all Symphony's claims. (*See* ECF No. 42, 53.) Defendant Keeco's motion for summary judgment is granted as to Plaintiff's unjust enrichment and promissory estoppel claims against it, and denied as to Plaintiff's breach of contract claim against it. Defendant Platt's motion for summary judgment is granted as to

1

Plaintiff's breach of contract and promissory estoppel claims against him and denied as to Plaintiff's unjust enrichment and tortious interference claims against him.

## I. FACTUAL BACKGROUND

Symphony is a boutique international advisory group focused on providing strategic advice to companies from a wide variety of industries. (Compl. at ¶ 21.) Among other things, Symphony has specialized expertise in mergers and acquisitions ("M&A"). (*Id.*) Paul Milone ("Milone") and Michael Mankowski ("Mankowski") are Symphony's principals and founders. (*Id.* at ¶ 23.) Symphony alleges that, before the events at issue here, Milone and Mankowski knew Platt through prior business dealings and that the three men agreed to work on M&A opportunities and to share proportionally in the corresponding fees earned (*i.e.* 1/3 for Platt, and 1/3 each for Milone and Mankowski).[1] (*Id.* at ¶ 24). While both Milone and Mankowski testified that the three men had agreed on this 1/3 split of fees, Platt disputes that there was an agreement. (Affirmation of Jamie M. Brickell ("Brickell Aff."), ECF No. 58, PX3, Milone Tr. 140:16-19, 220:4-16; Mankowski Tr. 50:17-51:2, 100:7-19; Platt Tr. 53:11-54:16, 62:3-22.)

In 2016, Symphony learned that private equity firm, Trivest Partners LP ("Trivest"), was looking for a purchaser for one of its portfolio companies, Ellery Homestyles ("Ellery"), a leading supplier of branded and private label home-fashion products, such as window treatments, bedding, shower curtains and blankets. (Compl. at ¶ 27.) In September 2016, Platt identified Keeco as a potential purchaser of Ellery—Milone and Mankowski had no prior connections with Keeco. (*Id.* at ¶ 29; Def. Platt Local Rule 56.1 Statement of Undisputed Material Facts, ("Def. Platt 56.1"), ECF No. 55-1, ¶ 5.)

---

[1] Platt owns his own independent company called Brand Matter, LLC. (Brickell Aff., Platt Tr. 39:12-21.)

On September 23, 2016, Platt emailed Milone and Mankowski a draft NDA between Symphony and Keeco. (Brickell Aff. PX7.) In the email, Platt questioned whether the NDA should include Ellery's name as the potential target company. (*Id.*) Milone and Mankowski replied that removing the name was Platt's decision to make based on how much Platt trusted Keeco. (*Id.*) Platt decided to delete Ellery's name from the NDA. (*Id.*) Platt then emailed Keeco's president and CEO, Christopher Grassi ("Grassi"), the proposed NDA which had been executed by Symphony. (Compl. at ¶ 33.) Grassi executed the NDA three days later on September 26, 2016. (Compl. Ex. A.) The five-page NDA had a 'Use and Protection of Confidential Information' provision and a 'Non Circumvention' provision that read as follows:

> **Use and Protection of Confidential Information**: The Receiving Party acknowledges the economic value to the Disclosing Party of all Confidential Information. For a period of 12 months after receiving Confidential Information, the Receiving Party shall:
> a) use the Confidential Information only for the purpose of evaluating the potential business relationship;
> b) restrict disclosure of the Confidential Information solely to those employees or authorized representatives of such party and its affiliates with a "need to know" and not disclose it to any other person or entity without the prior written consent of the Disclosing Party;
> c) advise those personnel who gain access to Confidential Information of their obligations with respect to the Confidential Information;
> d) make only the number of copies of the Confidential Information necessary to disseminate the Confidential Information to those personnel who are entitled to have access to it, and ensure that all confidentiality notices set forth on the Confidential Information are reproduced in full on such copies;
> e) safeguard the Confidential Information with the same degree of care to avoid unauthorized disclosure as recipient uses to protect its own confidential and private information;
> f) immediately upon the request of the Disclosing Party, the Receiving Party shall furnish to the Disclosing Party all complete and partial originals and copies of the Confidential Information.
>
> **Non Circumvention**: This is to confirm that each of the undersigned, jointly and severally, their affiliates and assignees confirm that any corporation, division, subsidiary, employees, agents or consultants, or assignees thereof will under no circumstance make any contact with, deal with or otherwise involve in

any investment or purchase transaction the parties defined herein, without written permission of the introductory party. Recipient agrees not to directly or indirectly circumvent, avoid or bypass Symphony Investment Partners regarding any opportunity presented to or with Recipient by Symphony Investment Partners.

(Compl. Ex. A, ¶¶ 2, 3.) Additionally, the NDA included an integration provision ("This Agreement represents the entire and integrated agreement between the parties. . . ."), and was governed by Delaware law. (Compl. Ex. A, ¶¶ 8, 9.) Finally, the NDA referred to an attached 'Schedule A' which "specifically itemize[d] certain initiatives that are under discussion." (Compl. Ex. A.) However, no 'Schedule A' was attached to the NDA.

Having withheld Ellery's name from the NDA, Platt informed Grassi that Ellery was the potential target company for sale over a phone call in early October 2016. (Declaration of Christopher Grassi, ("Grassi Decl."), ECF No. 52, ¶ 6; Brickell Aff. PX23.) Around the same time, Platt and Symphony exchanged messages about splitting fees for the potential Keeco-Ellery opportunity:

> <u>Platt to Mankowski on October 8, 2016:</u>
> I know we have an informal agreement, which is OK because I think we trust each other. We never talked about how we would split deal fees like Jantzen and Keeco/Ellery?? Let's at least have an email trail where we agree for our records. . . .
>
> <u>Mankowski replies to Platt:</u>
> . . . I think that we need to have in writing from Paul our fee split on Jantzen and Keeco, I will make sure that there is an agreement in place. . . .
>
> <u>Platt responds:</u>
> Good and agree. . . .

(PX27; Def. Platt 56.1 ¶ 12, Def. Ex. 50.) Symphony alleges that it, Platt, and Keeco continued to discuss Keeco's potential acquisition of Ellery for the next several months. (Compl. ¶ 43.)

In November 2016, Hugh Rovit, CEO of Trivest, invited Grassi to coffee where Rovit informed Grassi that Ellery was not, in fact, for sale. (Grassi Decl. ¶ 6.) In a December 2016 e-

mail, Grassi told Platt about Grassi's meeting with Rovit and Platt, in turn, told Symphony about this meeting. (Addenda in Supp. of Keeco's Mo. for Sum. J., Addenda 5, Def. Ex. 38.) Upon learning the news, Mankowski replied "[w]e are screwed." (*Id.*)

By March 2017, Keeco admitted that it became "cold and silent" towards Symphony. (Statement of Uncontroverted Facts and Conclusions of Law in Support of Keeco, LLC's Motion for Summ. J. ("Def. Keeco 56.1"), ¶ 10.) Between spring 2017 and early 2018, Symphony—despite Grassi's information that Ellery was not for sale—searched for other potential acquirers of Ellery. (Compl. ¶¶ 51-52.) Platt assisted in this effort by providing Symphony with six potential acquirers of Ellery between January 2017 and June 2017. (Def. Platt 56.1 ¶¶ 15, 17, 18, 19, 22, 26.)

On May 7, 2018, Ellery's investment bankers, Sawaya Partners, extended an invitation to Keeco to submit a 'revised proposal' for the acquisition of Ellery. (Brickell Aff. PX57.) It is unclear whether Keeco had submitted an original proposal. Keeco acquired Ellery in or about late September 2018 ("2018 Keeco-Ellery Transaction"). (Def. Platt 56.1 Statement ¶ 34.)

Keeco wired Platt $450,000 on September 21, 2018. (Brickell Aff. PX6.) The parties dispute the basis for this payment: Defendants assert that Houlihan Lokey, a private investment bank that assisted Keeco in financing its acquisition of Ellery, instructed Keeco to pay the $450,000 to Platt to compensate Platt for introducing Houlihan Lokey to Keeco. (*See* Def. Platt 56.1 ¶¶ 35 and 36; Platt Dep. Tr. 31:1-32:8, Tauscher Dep. Tr. 20:8-23; Decl. of William Tauscher ("Tauscher Decl.") at ¶ 8.) Symphony admits it did not know why Platt was paid but asserts that the emails between Platt and Keeco were "all part of his deal with Symphony to take advantage of the Ellery opportunity. . . ." (Brickell Aff., PX2, Milone Dep. Tr. 144:3-8; Pl. Platt 56.1 Response ¶¶ 35 and 36.) Additionally, Symphony asserts that Milone originally introduced Houlihan Lokey

to Platt as the right investment bank for Keeco to use in financing the Ellery acquisition. (Pl. Platt 56.1 Response ¶ 35 n.1; Pl. Platt 56.1 Counterstatement ¶ 80.)

In sum, Symphony alleges that Keeco breached the NDA by circumventing Symphony and directly purchasing Ellery. (Compl. ¶ 9.) Symphony also alleges that Platt breached an agreement to split fees with Milone and Mankowski for the potential Ellery transaction. (Compl. ¶ 10.) Symphony seeks to recover "broker fees" to which it believes it is entitled. (Compl. ¶ 1.) Specially, it alleges that it would have earned $3 million but for Keeco's and Platt's conspiracy to shut Symphony out of the Ellery transaction. (Compl. ¶ 62.)

## II. LEGAL STANDARDS

### A. Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23. The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing

to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### B. Relevant Principles of Delaware Contract Law

Delaware adheres to an objective theory of contracts, meaning that a contract's construction should be that which would be understood by an objective, reasonable third party. *Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752, 754 (Del. 2022) (citations and quotations omitted). This approach places great weight on the plain terms of a disputed contractual provision, and Delaware courts interpret clear and unambiguous terms according to their ordinary meaning. *Id.* The Court will not consider extrinsic evidence unless the text is ambiguous. *Id.* Ambiguity is present only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings. *Id.* Critically, a contractual provision is not rendered ambiguous simply because the parties in litigation differ as to the proper interpretation. *Id.* An ambiguity exists when the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings. *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012) (citations and quotations omitted). Where a contract is ambiguous, "the interpreting court must look beyond the language of the contract to ascertain the parties' intentions." *Id.*

### III. DEFENDANT KEECO'S MOTION FOR SUMMARY JUDGMENT IS DENIED AS TO PLAINTIFF'S BREACH OF CONTRACT CLAIM

There is a genuine dispute regarding Symphony's breach of contract claim and, thus, Keeco's motion for summary judgment on that claim is denied. Here, the two provisions of the NDA most relevant to the Court's analysis are the 'Use and Protection of Confidential Information' and the 'Non Circumvention' clauses.

#### a. Use and Protection of Confidential Information Provision

To the extent it is alleged, the evidence in the record does not show how Keeco violated this provision. First, the language of the NDA defines 'confidential information' as such that is either initially disclosed in writing or reduced to a writing within ten days of disclosure. (Compl. Ex. A.) The evidence shows that Grassi learned that Ellery was the potential target through an October 2016 phone call with either Platt or Symphony. (Grassi Decl. ¶ 6; PX23.) There is no evidence that this relay of information was documented in a writing between Keeco and Symphony or Platt, so it is not clear that Ellery's name was confidential information under the NDA's definition.[2]

Second, there is no evidence that Keeco disclosed Ellery's name as a potential target to anyone not entitled to have that information under the NDA, and certainly not within the twelve-month period outlined in the provision. As for the November 28, 2016 meeting between Rovit and Grassi, the facts show that Rovit invited Grassi to coffee on November 28, 2016 and informed Grassi that Ellery was not for sale. There is no evidence that Keeco, armed with the knowledge that Ellery was a potential target, disclosed this fact to Trivest or any other entity or individual.

---

[2] However, even Keeco concedes that Ellery's name was confidential information under the NDA (OA Tr. at 44:12-14, 51:17-23.)

### b. Non-Circumvention Provision

As for the non-circumvention provision, there is a genuine dispute regarding whether Keeco, by engaging in the 2018 Keeco-Ellery transaction, violated this clause. On one hand, as Defendants argue, the provision curtails Keeco's contact with, deals with, or other involvement with "the parties defined herein". It is undisputed that Ellery is not mentioned once in the written NDA.

On the other hand, the law requires this Court to "preserve the economic expectations of the parties" when interpreting gaps in an agreement. *See Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021) (Subject to the express terms of the agreement, when gaps in an agreement lead to controversy, the court has in its toolbox the implied covenant of good faith and fair dealing to fill in the spaces between the written words. The implied covenant, inherent in all agreements, ensures that the parties deal honestly and fairly with each other when addressing gaps in their agreement. The court's goal is to preserve the economic expectations of the parties.)

Here, even though Ellery's name was not specifically included in the NDA, the non-circumvention provision clearly seeks to restrict Keeco from engaging in any transaction it first learned about from Symphony. As aforementioned, the evidence shows that Keeco first heard of Ellery as a potential target from Symphony or Platt. (Grassi Decl. ¶ 6; PX23.) In essence, the name of a potential target company, like Ellery, is exactly the sort of confidential information Keeco likely contemplated receiving from Symphony when it signed the NDA.

Moreover, whether or not Ellery being a potential target constitutes an "opportunity presented to or with [Keeco] by [Symphony]" under the NDA is disputed by the parties, and the evidence in the record does not eliminate this genuine dispute. (NDA ¶ 3; Transcript of Proceedings held on 11/16/2021, dated Dec. 14, 2021, ECF No. 75, ("OA Tr."), at 42-51.) First,

the non-circumvention provision does not define or limit "any opportunity". Second, Symphony very likely believed that a potential transaction with Ellery was an 'opportunity' and, thus, withheld Ellery's name until the NDA was executed. (PX 7.) Finally, Keeco did eventually transact with Ellery suggesting that the information about Ellery as a potential target was a legitimate business 'opportunity'. (Platt 56.1 Statement ¶ 34.) Even though the transaction did not occur until 2018, the non-circumvention provision does not include a time-period, and a jury could conclude that it was reasonably operative two years later. *See Artesian Water Co. v. State, Dep't of Highways & Transp.*, 330 A.2d 441, 443 (Del. 1974) ("The general rule is that a contract remains in force until and unless it has been terminated according to its terms or by actions of the parties"); *Martin v. Star Pub. Co.*, 50 Del. 181, 190 (Del. 1956) ("If no time for performance is fixed, the court will imply a reasonable time.")

A jury could conclude that by engaging in the 2018 Keeco-Ellery transaction, Keeco was involved in an investment or purchase transaction "without the written permission of [Symphony]" or that it "directly or indirectly circumvent[ed], avoid[ed], or bypass[ed] Symphony Investment Partners. . . ." Even though the evidence shows that it was Rovit who first reached out to Grassi to set up a coffee meeting to discuss Ellery, a jury could conclude that Keeco circumvented Symphony by engaging in the 2018 Keeco-Ellery transaction.

Thus, Keeco's motion for summary judgment on Symphony's breach of contract claim is DENIED.

## IV. DEFENDANT KEECO'S MOTION FOR SUMMARY JUDGMENT IS GRANTED FOR PLAINTIFF'S UNJUST ENRICHMENT AND PROMISSORY ESTOPELL CLAIMS

There is no basis for Symphony's unjust enrichment and promissory estoppel claims against Keeco in light of the enforceable NDA, thus summary judgment is granted as to those claims.

"[T]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Wade Park Land Holdings, LLC v. Kalikow*, No. 21-CV-1657 (LJL), 2022 WL 657664, at *37 (S.D.N.Y. Mar. 4, 2022), amended, No. 21-CV-1657 (LJL), 2022 WL 2479110 (S.D.N.Y. July 6, 2022); *see also Air Prod. & Chemicals, Inc. v. Wiesemann*, 237 F. Supp. 3d 192, 216 (D. Del. 2017) ("Delaware courts ... have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract.") Similarly, "[w]here an enforceable contract exists, the doctrine of promissory estoppel is inapplicable and a plaintiff cannot recover under this theory." *Doe v. Hobart & William Smith Colleges*, 546 F. Supp. 3d 250, 274 (W.D.N.Y. 2021); *Weiss v. Nw. Broad. Inc.*, 140 F. Supp. 2d 336, 344–45 (D. Del. 2001) ("[P]romissory estoppel is generally viewed as a consideration substitute for promises which are reasonably relied upon, but which would otherwise not be enforceable.")

Here, it is undisputed that the NDA is a valid, enforceable contract. (OA Tr. 4, 29-30). It governs the relationship between its signatories, Keeco and Symphony, and includes an unambiguous integration clause instilling the NDA as the only agreement between those parties. (OA Tr. At 93-94 "The promises that were made are all part of the NDA.").

Thus, Symphony's unjust enrichment and promissory estoppel claims fail against Keeco as a matter of law. Summary judgment is granted as to those claims.

## V. DEFENDANT PLATT'S MOTION FOR SUMMARY JUDGMENT IS GRANTED AS TO PLAINTIFF'S BREACH OF CONTRACT CLAIM

Symphony argues that there is "ample evidence" disputing Platt's position that he, Milone, and Mankowski never agreed to split fees pertaining to the potential Ellery transaction. (Opp. at 14, 18.) However, the Court finds no genuine dispute. To the contrary, the email exchanges between Platt, Milone, and Mankowski about fee splitting suggest that they never agreed to any specific split. The Court can only interpret Platt's October 8, 2016 email to Mankowski literally to mean that—at that point in time—Platt and Symphony never discussed how to split fees.[3]

Milone and Mankowski's testimony does not present a genuine dispute regarding this conclusion. (Milone Tr. 230; and Mankowski Tr. 50.) For example, Milone testified that fee splitting "was the understanding based on proposed engagements and verbal communications, and clear discussions between Mick and Rick." (Milone, 230) and Mankowski, similarly noted "Rick and I discussed we'd split it a third, a third, a third, any fee that we received. And that was understood. I felt he was honorable about it, and we were certainly going to be honorable about it, that anything that we did, we would share." (Mankowski, 50.)

Overall, Milone and Mankowski's testimony regarding fee splitting lacks sufficient detail to present a genuine dispute. Even if there was an understanding between the three men to split fees, the October 8, 2016 email shows that they intended for such an understanding to be detailed in a writing, which never took place. Outside of their testimony, the only other piece of evidence that refers to a 1/3 split is the unexecuted June 15, 2017 agreement between Platt and Symphony. But that agreement, was not in relation to the Keeco/Ellery transaction. (Def. Ex. 44 at Schedule

---

[3] Platt details in his testimony that Mankowski had spoken to him about a split but that he would have never agreed to it. (Platt Tr. 53:11-54:16, 62:3-22.)

12

A.)⁴ Defendant Platt's motion for summary judgment is granted as to Symphony's breach of contract claim.

## VI. DEFENDANT PLATT'S MOTION FOR SUMMARY JUDGMENT IS DENIED AS TO PLAINTIFF'S UNJUST ENRICHMENT CLAIM

There is a genuine factual dispute as to whether Defendant Platt was unjustly enriched at Symphony's expense.

Unjust enrichment is "a New York common law quasi-contract cause of action requiring the plaintiff to establish: (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018). The claim is available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Amable v. New Sch.*, 551 F. Supp. 3d 299, 318 (S.D.N.Y. 2021) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1186 (2012)). Under New York law, "the existence of a valid and enforceable contract governing a particular subject matter precludes recovery for unjust enrichment arising out of the same matter." *Grund v. Delaware Charter Guarantee & Tr. Co.*, 788 F. Supp. 2d 226, 251 (S.D.N.Y. 2011), on reconsideration, No. 09 CIV. 8025, 2011 WL 3837146 (S.D.N.Y. Aug. 30, 2011)

Here, Symphony's unjust enrichment claim against Platt may be considered since no contract existed between them. Symphony's complaint alleges that it "would have earned a broker fee of at least $3 million but for Keeco's and Platt's conspiracy to shut it out of the deal," and that

---

⁴ An August 31, 2016 email from Milone to Mankowski also refers to Platt being a "1/3 partner" but does not mention fee splitting and specifically refers to a deal called Sierra Design. (*See* Brickell Aff., PX 16.)

"it is against equity and good conscience to permit Platt to retain the benefit of the Ellery purchase transaction without payment to Symphony of its share of the broker's fee."

Platt argues that any benefit he received was not at the expense of Symphony. Specifically, he argues that the $450,000 fee he received from Houlian Lokey, through Keeco, was in exchange for introducing those two entities. (*See* Def. Platt 56.1 at ¶¶ 35 and 36; Platt Dep. 31:1-32:8; Tauscher Dep. 20:8-23; Tauscher Decl. ¶ 8.) However, outside of his deposition testimony and sworn statements, there is no evidence to support Platt's position.

In response, Symphony notes how "the record includes dozens of emails between Platt and Keeco concerning [the Ellery] transaction. . . ." but the emails in the record do not show how the $450,000 Platt received was a "broker fee" or "advisory fee" and not, as Defendants argue, for an introduction given at Houlihan Lokey's request. (*See* Pl. Keeco 56.1 Response ¶¶ 35 and 36.) Indeed, Milone admitted in his deposition that he only knew Platt was paid based on what "people have told me," and that he had not seen any of Platt's paperwork. (Brickell Aff., PX2, Milone Dep. Tr. 144:3-8.; *see also* OA Tr. at 107:11-108: 5.) Finally, while it fails to cite any evidence to support the assertion, Symphony's allegation that Platt would have never known his Houlihan Lokey contact without Symphony speaks to a potential benefit at Symphony's expense. (Pl. Platt 56.1 Response 35 n.1.)

Thus, when viewed in a light most favorable to Symphony, there is a genuine factual dispute as to whether Keeco paid Platt at the request of Houlian Lokey, whether the payment was for an introduction or for general assistance on the 2018 Keeco-Ellery transaction, and whether Platt was only able to make said introduction because of Symphony. Thus, Platt's motion for summary judgment as to Symphony's unjust enrichment claim is denied.

## VII. DEFENDANT PLATT'S MOTION FOR SUMMARY JUDGMENT IS GRANTED AS TO PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM

No genuine dispute exists as to Symphony's promissory estoppel claim against Platt. A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance. *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, No. 1:21-CV-2259-GHW, 2021 WL 5772290, at *5 (S.D.N.Y. Dec. 6, 2021). Although it is correct that a claim for promissory estoppel cannot be predicated on obligations arising out of a valid contract, it is also well-established that "[p]laintiffs who allege the existence of a valid contract may nonetheless plead the alternative theories of promissory estoppel and breach of contract when the defendant does not concede the enforceability of such contract." *Pers. Watercraft Prod. SARL v. Robinson*, No. 16-CV-9771 (AJN), 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017).

As aforementioned, the Court finds no promise, certainly not a clear and unambiguous promise, that Platt made to Symphony. Platt's motion for summary judgment as to Symphony's promissory estoppel claim is granted.

## VIII. DEFENDANT PLATT'S MOTION FOR SUMMARY JUDGMENT IS DENIED AS TO PLAINTIFF'S TORTIOUS INTERFERANCE CLAIM

Platt's motion for summary judgment as to Symphony's tortious interference with contract claim is denied.

To state a contract-interference claim under New York law, a plaintiff must demonstrate the existence of a valid contract, the defendant's knowledge of the contract's existence, that the defendant intentionally procured a contract breach, and the resulting damages to the plaintiff. *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 124–25 (2d Cir. 2008). Under

traditional principles of New York law, a party may not recover for tortious inducement of breach of a contract without proving that the underlying contract has been breached. *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990). "To satisfy the third element of a tortious interference with contract claim, Defendant must show that Plaintiff intentionally procured the . . . breach of the contract without justification." *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 350 (S.D.N.Y. 2020).

Here, as aforementioned, the NDA was a valid, enforceable agreement between Symphony and Keeco. It is also undisputed that Platt knew about the NDA and facilitated its execution. However, there is a genuine dispute of material fact whether Keeco breached the NDA and whether Platt intentionally procured such breach. *See Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*, 241 F. Supp. 2d 246, 279 (S.D.N.Y. 2002) (Denying plaintiff's motion for summary judgment on its' tortious interference with contract claim against Defendant because there was a genuine issue of material fact whether defendant breached the contract with plaintiff.)

Thus, Platt's motion for summary judgment as to Symphony's tortious interference with contract claim is denied.

## IX.  CONCLUSION

Defendant Keeco's motion for summary judgment is granted as to Plaintiff's unjust enrichment and promissory estoppel claims against it and denied as to Plaintiff's breach of contract claim against it. Defendant Platt's motion for summary judgment is granted as to Plaintiff's breach of contract and promissory estoppel claims against him, and denied as to Plaintiff's unjust enrichment and tortious interference claims against him.

The Clerk of Court is ordered to close ECF Nos. 42 and 53, accordingly.

Dated: New York, New York
      August 30, 2022

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge